## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TIM HILL**                                                                                          **CIVIL ACTION**

**VERSUS**                                                                                         **NO. 20-2397**

**SOCIAL SECURITY ADMINISTRATION**                                   **SECTION 3**

### ORDER AND REASONS

Plaintiff Tim Hill filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). On August 20, 2021, the parties consented to proceed before the magistrate judge in this matter. (Rec. Doc. No. 22). The matter has been fully briefed on cross-motions for summary judgment. The issues are thus ripe for review. For the following reasons, **IT IS ORDERED** that Plaintiff's motion for summary judgment (Rec. Doc. No. 21) be **DENIED**, the Commissioner's cross-motion (Rec. Doc. No. 23) be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

### I.    BACKGROUND

On March 15, 2019, Tim Hill ("Plaintiff") filed a Title II application for DIB, alleging disability as of May 2, 2017, due to back and neck problems, sleep apnea, COPD, degenerative disc disease, sciatica, herniated discs, and anxiety. (Rec. Doc. No. 21-1, p. 3). His claim was initially denied on May 22, 2019, and upon reconsideration on June 26, 2019. *Id*. Plaintiff requested a hearing, which was held on August 13, 2019, before an administrative law judge ("ALJ"). *Id*. The ALJ issued an unfavorable decision finding that the Plaintiff was not disabled on February 13, 2020. *Id*.

The ALJ analyzed Hill's claim pursuant to the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(i-v). At the first step, the ALJ found that the Plaintiff had not engaged in

1

substantial gainful activity since May 2, 2017, his alleged onset date. (Rec. Doc. No. 23-1, p. 2) (citing Tr. 13, Finding 2). At the second step, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine with radiculopathy; degenerative disc disease of the cervical spine; COPD; obstructive sleep apnea; obesity; atypical depression; and anxiety were severe impairments. *Id*. (citing Tr. 13, Finding 3). At the third step, the ALJ found that the impairments failed to meet or equal a listed impairment for presumptive disability under the regulations. *Id*. (citing Tr. 14-15, Finding 4).

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), stating:

> [H]e can stand and walk a total of four hours in an eight-hour day, sit a total of six hours in an eight-hour day, and frequently push and pull up to 10 pounds with the bilateral upper extremities. The claimant requires a sit/stand option after 60 minutes, of up to five minutes without increased time off task. He is able to occasionally balance; stoop; kneel; crouch; crawl; and climb ramps, stairs, ladders, ropes, and scaffolds. The claimant is able to frequently engage in overhead reaching with the bilateral upper extremities. He must avoid concentrated exposure (no more than frequent) to pulmonary irritants (fumes, odors, dust, gases, and poor ventilation) and hazards (dangerous moving machinery/unprotected heights). The claimant is able to perform simple, routine, repetitive tasks of unskilled work.

(Rec. Doc. No. 16-2, p. 16). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a rail car mechanic and armed security guard. (Rec. Doc. No. 23-1, p. 3) (citing Tr. 19, Finding 6). At step five, upon consideration of testimony from the vocational expert, the ALJ found that Plaintiff was not disabled because he was capable of performing other jobs existing in significant numbers in the national economy. *Id*. (citing Tr. 20-21, Finding 10). Accordingly, the ALJ found that Plaintiff was not under a "disability" as defined in the Social Security Act from May 2, 2017 through February 13, 2020, the date of the ALJ's decision. *Id*. (citing Tr. 21, Finding 11).

On June 29, 2020, the Appeals Council denied a request to review the ALJ's decision,

making the ALJ's unfavorable decision the Commissioner's final decision. (Rec. Doc. No. 21-1, p. 4). Plaintiff filed the present civil action to challenge that decision pursuant to 42 U.S.C. § 405(g).

## II.   LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

Although a reviewing court must review the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues *de novo*, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive, and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). If this duty is not satisfied, the decision that results is not supported by substantial evidence. *See id*. However, the Court does

3

not expect procedural perfection from the ALJ and will reverse as not supported by substantial evidence only if the failure to develop the record prejudiced Plaintiff. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). In other words, the plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

To be entitled to social security benefits, a claimant must show that he is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). A claimant must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501-404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In evaluating a disability claim, the Commissioner utilizes the five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing pasts relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

4

Under the first four steps of the analysis, the burden lies with the claimant to prove he has a disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his initial burden, the burden shifts to the Commissioner at step five to show that the claimant can perform other gainful employment in the national economy. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity" (RFC), given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.* The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). The Commissioner, rather than the courts, must resolve conflicts in the

evidence. *Id*.

## IV.   ISSUES ON APPEAL

    a. Whether the ALJ properly evaluated the medical opinion of Dr. Poche when determining Hills RFC.

    b. Whether the ALJ properly incorporated and explained the mental limitations found at Step II in determining Hill's mental RFC.

## V.   ANALYSIS

### 1. Whether the ALJ properly evaluated the medical opinion of Dr. Poche when determining the Plaintiff's RFC

Hill contends that the findings of the ALJ regarding Dr. Poche are unsupported by substantial evidence and premised on legal error. (Rec. Doc. No. 21-2, p. 5). First, Plaintiff notes that the ALJ's reasoning for finding the opinions of Dr. Poche unpersuasive is broad and conclusive and fails to meet the heightened articulation requirements of the Commissioner's new regulations. *Id*. Plaintiff contends that the ALJ may not comply with the articulation requirements of the regulations by simply stating a general conclusion, bereft of any citation or analysis. *Id*. at 7. Rather, the ALJ should provide a logical bridge between his conclusions and the evidence in the record. *Id*. Plaintiff contends that the opinion of Dr. Poche is entirely supported by and consistent with the record, and that the ALJ's evaluation of the physical assessment as unpersuasive is flawed. *Id*. at 9. Plaintiff contends that the rationale for finding Dr. Poche's opinion unpersuasive – by specifically focusing on whether or not Plaintiff had a normal gait – is deficient, as it focuses on his gait pattern rather than his ability to walk for extended periods of time without rest or pain due to his breathing difficulties. *Id* at 6.

Furthermore, Plaintiff notes that the ALJ offers no rationale whatsoever as to why the mental capacity assessment provided by Dr. Poche was found unpersuasive, and that rejecting Dr. Poche's assessment through only boilerplate rationale warrants remand. *Id*.  Finally, Plaintiff

contends that the ALJ's error was harmful because the vocational expert testified that an individual limited to the extent opined by Dr. Poche would be unable to perform any work activity. *Id*. at 10. Plaintiff argues that because this case was decided at Step V, the ALJ could have concluded that there was no other work available to Hill and that he was thus entitled to DIB had the ALJ accepted Dr. Poche's opinions.

The Commissioner maintains that substantial evidence supports the ALJ's decision that Plaintiff retained the RFC to perform a reduced range of unskilled, light work. (Rec. Doc. No. 23-1, p. 5). The Commissioner contends that the ALJ specifically considered the opinions of Dr. Poche and thoroughly explained his reasoning. *Id*. at 6. Specifically, the Commissioner states that the ALJ found neither "check the box" form completed by Dr. Poche persuasive because they were not supported by his own treatment notes and inconsistent with the record as a whole. *Id*. Further, although Dr. Poche's records reflect issues such as decreased thoracolumbar range of motion, they contain no findings that would necessitate the extreme limitations he included in the check-the-box forms. *Id*. at 8. Finally, the Commissioner contends that the ALJ found Dr. Poche's mental health assessment unpersuasive because the record did not reflect any mental health treatment besides the prescribing of diazepam for an unspecified anxiety order. *Id*.

An RFC determination describes the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* at § 404.1545(a)(1-3). The relative weight given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the

record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam). Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

The Social Security Administration recently revised the regulations concerning how the agency considers medical opinion evidence in disability determinations. For claims filed on or after March 27, 2017, as in this case, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (per curiam). Instead, the ALJ must consider each medical opinion or prior administrative finding in the record and evaluate its persuasiveness applying five factors: (1) supportability, (2) consistency, (3) relationship with the claimant including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of treatment relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id*. § 404.1520c(c).

An ALJ must articulate how he considered the supportability and consistency factors for a medical opinion or a prior administrative medical finding in his determination. *Id*. § 404.1520c(b)(2). However, the ALJ is not required to discuss how he considered the medical source's relationship with the claimant, specialization, or other factors in his determination. *Id*. When one medical source provides multiple opinions, the ALJ is not required to articulate how he "considered all of the factors for all of the medical opinions," but instead should articulate how he considered those opinions "together in a single analysis using the factors" listed above. *Id*. §

404.1520c(b)(1).

The ALJ included one paragraph specifically addressing the persuasiveness of Dr. Poche's opinions:

> The "Mental Capacity Assessment" and "Physical Assessment" completed by Dr. Poche on March 22, 2019 (Ex. 3F) are not persuasive because they are not supported by his own treatment notes and are also inconsistent with the record as a whole. While Dr. Poche stated the claimant was able to walk less than a city block without rest or significant pain, gait is consistently described as normal in his treatment notes. The degree of symptomology reflected in Dr. Poche's assessments is also not reflected in his treatment notes. The "Certification of Mobility Impairment" completed by Dr. Poche on November 11, 2019 (Ex. 8F), is inherently neither valuable nor persuasive. Also, the various occupational forms and work releases completed prior to the alleged onset date (*see, e.g.,* Ex. 7F/2-6, 7, 13) are also inherently neither valuable nor persuasive.

(Rec. Doc. No. 16-2, p. 20). Plaintiff contends that the ALJ did not comply with the articulation requirements of the revised regulations because he stated general conclusions. (Rec. Doc. No. 21-2, p. 7). This Court agrees that the statements in the single paragraph quoted above addressing the persuasiveness of Dr. Poche's assessments read as conclusory. He simply states that these assessments "are not supported by [Dr. Poche's] own treatment notes" and are "inconsistent with the record as a whole." (Rec. Doc. No. 16-2, p. 20). He includes only one specific example to support his conclusory statements – that the Plaintiff had a normal gate, despite Dr. Poche's statement that the Plaintiff could walk less than one block without pain. *Id*.

Although the ALJ is not required to articulate how he or she considered each and every medical opinion contained in a medical source statement from a given medical provider, *see id.* at § 404.1520c(b)(2), the ALJ must still provide some explanation for rejecting a medical opinion of record. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *see also Price v. Astrue*, 401 Fed. App'x 985, 987 (5th Cir. 2010) (per curiam) (Although the ALJ does not need to comment on every piece of evidence, he must still "build an accurate and logical bridge between the evidence and the final determination."). This is so because without any explanation from the ALJ, it is

impossible for the Court to determine whether the ALJ's finding is supported by substantial evidence. *See Harmon v. U.S. Comm'r*, No. 6:14-cv-02660, 2015 WL 9226138, at *7 (W.D. La. Nov. 17, 2015) (concluding reversal and remand was required where ALJ failed to explain basis of decision, making it impossible for the court to determine whether the ALJ provided the correct legal standard or whether the finding was supported by substantial evidence).

However, despite the conclusory nature of the above-referenced statements, the ALJ here goes into great detail regarding his analysis of Dr. Poche's assessments throughout his opinion. In addition to summarizing the medical evidence at length, the ALJ specifically articulated the inconsistencies between Dr. Poche's assessments and the medical evidence as a whole. After addressing all the medical opinion evidence, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Treatment for the claimant's degenerative disc disease has been routine and conservative in nature. The unsteady gait noted by Dr. Poche in March 2019 (Ex. 2F/10) appears to be isolated, as examinations both before and after March 2019 show normal gait. (Exs. 2F/12, 10F/6). Treatment notes do not reflect a prescription or recommendation for a cane. The evidence of record does not show any emergent treatment or hospitalizations for the claimant's claimed COPD, and respiratory findings are consistently within normal limits upon examination. The claimant has been prescribed diazepam by Dr. Poche for unspecified anxiety disorder, but the record reflects no mental health treatment. The sit/stand option assessed herein accounts for the claimant's reported back pain, and the limitation in overhead reaching assessed herein accounts for the claimant's reported neck pain.

(Rec. Doc. No. 16-2, p. 20). The Court finds that the ALJ did in fact provide an explanation for finding Dr. Poche's opinion unpersuasive. Just a few paragraphs prior and quoted in full above, the ALJ stated that "[t]reatment for the claimant's degenerative disc disease has been routine and conservative in nature," that the unsteady gait "appears to be isolated, as examinations both before and after March 2019 show normal gait," that "[t]reatment notes do not reflect a prescription or

recommendation for a cane," that the evidence "does not show any emergent treatment or hospitalizations for the claimant's COPD," and that "respiratory findings are consistently within normal limits upon examination." *Id*. at 19. These statements are not simply summaries of the record, but rather, an explanation of the inconsistencies between Dr. Poche's assessments and the medical evidence in the record.

The Court finds the cases cited by Mr. Hill distinguishable from the instant matter. Plaintiff attaches the decision in *William T. v. Commissioner of Social Security*, in which the Court reversed the Commissioner's decision and remanded the case for further proceedings, finding the ALJ committed legal error because his decision neither cited nor discussed a medical opinion. *William T. v. Commissioner of Social Security*, No. 6:18-CV-0055-BU, 2020 WL 6946517 (N.D. Tex. 11/25/2020). In that case, Plaintiff argued that the ALJ erred in not properly weighing the opinion of the his treating physician. *Id*. at *5. While the Court noted that pursuant to the revised regulations, the opinion of the treating physician is not entitled to controlling weight, the Court found that the ALJ failed to even mention the opinion in his discussion. *Id*. at *6. This failure to mention the treating physician's medical opinion at any point in his decision was deemed a legal error. *Id*. Unlike *William T.*, the ALJ in this case thoroughly analyzed Dr. Poche's opinions, making numerous references to his findings throughout his discussion.

Plaintiff also cites to *Ramirez v. Saul* for its contention that the ALJ failed to create a logical bridge between his conclusions and the evidence of record. In *Ramirez*, the ALJ departed from a medical opinion regarding the walking and standing limitations imposed on the claimant. *Ramirez v. Saul*, 2021 WL 2269473, at *5 (W.D. Tex. June 3, 2021). The Court noted that the ALJ provided no explanation for his decision to depart from the medical opinion leaving the Court to speculate as to the reason for the omission. *Id*. Although the ALJ "summarized the medical evidence of

11

record accurately, he never discussed the evidence in the context of evaluating the persuasiveness" of the medical opinions. *Id*. at *6. Thus, the Court remanded for further fact-finding, determining that the lack of an explanation left the Court with an "inexplicable discrepancy." *Id*. at *6-7. Unlike *Ramirez*, the ALJ here created a "logical bridge" between his determination that Dr. Poche's opinions were unpersuasive and his reasoning to that effect by providing the court with numerous identified inconsistencies in the record.

Finally, Plaintiff cites to *Bridges v. Comm'r of Soc. Sec*., where an ALJ found an opinion "unpersuasive" by stating the records from the provider "contained no objective findings which would support her opinion." *Bridges v. Comm'r of Soc. Sec.*, 4:20-CV-89-DMB-DAS, 2021 WL 2908671, at *2 (N.D. Miss. July 9, 2021). The Court noted that "[s]tating that a provider's records 'contained no objective findings,' to support an opinion, without any further explanation, is meaningless boilerplate." *Id*. (citing *Audler v. Astrue*, 501 F.3d 446 (2007)). The Court went on to find the error harmless because "from its review of the clinic records," the opinions were indeed "not supported by the medical records," as the provider's notes clearly contradicted her suggested limitations. *Id*. Here, the Plaintiff contends that Dr. Poche's opinions are clearly supported by the evidence of record, however, this Court is not permitted to reweigh the evidence and an ALJ's credibility determination is generally entitled to great deference. *See Acosta v. Astrue*, 865 F. Supp. at 790. The ALJ here did not find Dr. Poche's assessments persuasive and, as stated earlier, clearly articulated the inconsistencies in Dr. Poche's records that led him to this determination.

Further, the Plaintiff notes that the ALJ offers no rationale as to why the mental capacity assessment provided by Dr. Poche was unpersuasive. (Rec. Doc. No. 21-2, p. 9). He states that the mental capacity assessment is rejected through only boilerplate rationale, and that alone warrants remand. *Id*. at 10. The Court notes that the regulations do not require the ALJ to articulate how he

considered all of the factors for all of the medical opinions, but instead, should articulate how he considered those opinions "together in a single analysis using the factors" listed above. 20 C.F.R. § 404.1520c(b)(1).  Here, the ALJ specifically referenced Dr. Poche's mental capacity assessment by noting that "[t]he claimant has been prescribed diazepam by Dr. Poche for unspecified anxiety disorder, but the record reflects no mental health treatment." Thus, the ALJ found the opinion unpersuasive, and pointed to the absence of mental health treatment provided by Dr. Poche throughout his treatment of the Plaintiff to support this determination.

The ALJ explained his reasoning behind his decision to find Dr. Poche's assessments unpersuasive. An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (holding that good cause exists for abandoning a treating physician's opinion where it is unsupported by the evidence). Furthermore, the Commissioner, not the courts, must resolve conflicts in the evidence, and if substantial evidence supports the decision, it must be affirmed even if there is evidence on the other side. *Lewis v. Commissioner of Social Security*, No. 20-345-EWD, 2021 WL 4142279, at *4 (M.D. La. Sept. 10, 2021); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Therefore, the Court finds that the ALJ did not err in evaluating the medical opinion of Dr. Poche in determining Mr. Hill's RFC and the findings are supported by substantial evidence.

### 2.  Whether the ALJ properly incorporated and explained the mental limitations found at Step II to determine Hill's mental RFC

At the second step, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine with radiculopathy; degenerative disc disease of the cervical spine; COPD; obstructive sleep apnea; obesity; atypical depression; and anxiety were severe impairments. (Rec. Doc. No. 16-2, p. 14). At the third step, the ALJ found that the Plaintiff does not have an impairment or combination

of impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1. (Rec. Doc. No. 16-2, p. 15). The ALJ found that "[i]n

understanding, remembering or applying information, the claimant has a moderate limitation. In

interacting with others, the claimant has a mild limitation. With regard to concentrating, persisting,

or maintaining pace, the claimant has a mild limitation. As for adapting or managing oneself, the

claimant has experienced a mild limitation." *Id*. Within the same paragraph, the ALJ further stated:

> The State agency psychological consultants, Gary Lindsay, Ph.D., and Lisette P.
> Constantin, Ph.D., assessed no limitation in the "paragraph B" criteria. (Exs. 2A/5-7, 4A/6-
> 7). The consultative psychological examiner, William E. Fowler, Ph.D., reported the
> claimant was generally able to understand the retain simple instructions (Ex. 6F/5), and the
> undersigned finds the evidence as a whole supports moderate limitations in understanding,
> remembering, and applying information. Because the claimant's mental impairments do
> not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B"
> criteria are not satisfied.

(Rec. Doc. No. 16-2, p. 15). Plaintiff contends that despite finding limitations in "every

domain of mental functioning," the ALJ offered no explanation for the results of the limitations.

(Rec. Doc. No. 21-2, p. 11). Plaintiff also contends that the ALJ created an RFC limiting Plaintiff

to "simple, routine, repetitive tasks," but provided no explanation as to how he came to that

conclusion. *Id*. at 12. Furthermore, Mr. Hill argues that the ALJ failed to perform the required

"function-by-function" analysis, failed to rely on a state agency consultant opinion, and failed to

provide any analysis of the mental impairments—amounting to harmful error. *Id*. Finally, Plaintiff

argues that the ALJ was required to explain why these mild limitations were excluded from the

RFC determination, which Plaintiff contends contains no limitations relating to social interaction

or adaption. *Id*.

The Commissioner contends that the ALJ's analysis reveals a thorough consideration of

the medical evidence and appropriate assessment of mental impairments. (Rec. Doc. No. 23-1, p.

9). The Commissioner states that the ALJ specifically explained his findings at Step III by

14

discussing the opinions of the state agency psychological consultants and the consultative psychological examiner. *Id*. at 10. Additionally, the Commissioner contends that Plaintiff is conflating the "paragraph B" findings with the RFC, and that no Fifth Circuit-mandated requirement or statute, regulation, or policy, requires an ALJ to incorporate the "paragraph B" findings word-for-word into the RFC assessment. *Id*. at 10-11. Finally, the Commissioner notes that the RFC limited Hill to simple, routine, repetitive tasks of unskilled work, which does not contradict the finding that he was moderately limited in his ability to understand, remember, or apply information. *Id*. at 11. Moreover, the Commissioner states that the ALJ limited Plaintiff to unskilled work, meaning the least complex type of work, which typically involves working with objects, not people. *Id*.

The ALJ indicated that the limitations identified in the "paragraph B" criteria are not an RFC assessment, but are used to rate the severity of mental impairments at Steps II and III. (Rec. Doc. No. 16-2, p. 16). The mental RFC used at Steps IV and V of the sequential evaluation process require a more detailed assessment of the areas of mental functioning, and that the ALJ concluded that the RFC assessment reflects the degree of limitation found in the "paragraph B" mental function analysis. *Id*. In laying out the evidence supporting his RFC determination, the ALJ began with the hearing testimony and noted the testimony from Plaintiff that "he experiences anxiety as a result of 'everyday life.'"[1] *Id*. at 17. When reviewing the consultative psychological evaluation performed by Dr. Fowler, the ALJ noted that Mr. Hill (1) reported pain; (2) "became grouchy and snapped at people when in pain;" (3) was "prescribed diazepam for his snappiness and to act as a muscle relaxer;" (4) denied any history of mental health treatment; (5) and reported that he had

---

[1] Q [ALJ]: Okay. Describe the anxiety for me, please?
A [Hill]: Anxiety is from just everyday life, I guess, it's what I like to say it's going from being able to dress myself to bathe myself to needing my wife to help me. I guess I got a lot of pride issues there. I'm trying to swallow and it's just hard to swallow. (Rec. Doc. No. 16-2, p. 39).

friends and generally got along with others but that he "occasionally snapped at his friends and children due to his pain." *Id.* at 18. As noted by the ALJ, Dr. Fowler observed that Mr. Hill was "generally logical, coherent, and goal-directed," "fully oriented upon mental status examination," "recent recall was fair," "remote recall seemed fair overall," and "insight and judgment appeared fair." *Id.* Dr. Fowler diagnosed Mr. Hill with atypical depression and "reported the claimant was generally able to understand and retain simple instructions," but "attention, concentration, pace, and persistence were limited by distraction from pain." *Id.* at 19. Finally, the ALJ noted that Dr. Fowler reported that Mr. Hill's ability to work with others "might be impaired by irritability." *Id.* Lastly, the ALJ noted that two state agency psychological consultants, Dr. Lindsay and Dr. Constantin, "assessed no severe mental impairment" whatsoever. *Id.*

In considering all the evidence, the ALJ concluded that the claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other record evidence for the aforementioned reasons. *Id.* Particularly relevant here is the absence of *any* mental health treatment in the record, besides the prescription of diazepam by Dr. Poche.

Mr. Hill's contentions that the ALJ offered no explanation for the conclusions regarding limitations and that the ALJ created an RFC limiting Plaintiff to "simple, routine, repetitive tasks," but provided no explanation as to how he came to that conclusion, are unfounded. The above explanation provides substantial evidence to support the ALJ's findings at step 2 and 3, as well as in determining the RFC.

Plaintiff also argues that the ALJ failed to perform a function by function analysis of his work limitations. When a claimant is found to have a mental impairment, the ALJ must determine its severity by evaluating "the degree of functional loss resulting from the impairment in four

16

separate areas deemed essential for work." *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001) (citing 20 C.F.R. § 404.1520a(b)(3)). These areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3) (2011); 20 C.F.R. Pt. 404, Subpt. P.App. 1, § 12.00C. This rating process is known as "the psychiatric review technique" or the "technique." *Owen v. Astrue,* No. 3:10–CV–1439–BH, 2011 WL 588048, at \*14 (N.D.Tex. Feb.9, 2011). If the mental impairment is severe but does not meet or medically equal a listed impairment, the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); *Boyd,* 239 F.3d at 705.

Before making an RFC determination, however, the ALJ must perform a function-by-function assessment of the claimant's capacity to perform sustained work-related physical and mental activities "based upon all of the relevant evidence" and taking into account "both exertional and nonexertional factors." *Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001) (citing Security Ruling (SSR) 96–8P, 1996 WL 374184, at \*3–6 (S.S.A. July 2, 1996)). "While the ALJ is not required to use the exact language from his psychiatric review technique, he must consider all of [the claimant's] limitations, including those found in the technique." *Owen,* 2011 WL 588048, at \*14. Specifically, the ALJ must itemize the "various functions contained in paragraph[ ] B ..." and express them "in terms of work-related mental activities." SSR 96–8P, 1996 WL 374184, at \*5–6. These activities "include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at \*6; *see also* 20 C.F.R. § 404.1545(c) (2012). "[W]ithout the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work" at step four or perform other "types of work" at step five. SSR 96–8P,

17

1996 WL 374184, at *3–4; *accord Myers,* 238 F.3d at 620. Notably, even if the ALJ fails to conduct a function-by-function analysis, he satisfies this requirement if he bases his RFC assessment, at least in part, on a state medical examiner's report containing a function-by-function analysis. *Beck v. Barnhart,* 205 F. App'x 207, 213–14 (5th Cir.2006) (per curiam); *Onishea v. Barnhart,* 116 Fed. App'x. 1 (5th Cir.2004) (per curiam).

Here, the ALJ specifically satisfied the "paragraph B" criteria by determining that the Plaintiff had moderate limitations in understanding, remembering, and applying information, mild limitations in interacting with others, mild limitations in concentrating, persisting, or maintaining pace, and mild limitations for adapting or managing oneself, which are supported by substantial evidence as outlined above. (Rec. Doc. No. 16-2, p. 15). Furthermore, the ALJ relied on state medical examiner reports containing function-by-function analyses, like Dr. Fowler's, when making that decision. *See id.* at 18.

Finally, Plaintiff argues that the ALJ was required to explain why these mild limitations were excluded from the RFC determination. *Id.* First, the Court notes that the Commissioner's policy guidance makes clear that "the limitations identified in the 'paragraph B' [] criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Social Security Ruling 96-8p, 1996 WL 374184, at *4 (1996). Furthermore, the Court finds that the ALJ did in fact account for these mild limitations in determining that Plaintiff was limited to simple, routine, repetitive tasks of unskilled work. This directly relates to the ALJ's finding that the Plaintiff was moderately limited in his ability to understand, remember, and apply information. As for the social interaction or adaption, the ALJ determined Plainiff was limited to unskilled work, which typically involves working with objects rather than people. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 § 202.00(g); SSR 85-15, 1985 WL 56857

at *4; *see also Charland v. Astrue*, 2010 WL 624047, at *7 (N.D. Tex. Aug. 15, 2009), *report and recommendation adopted* (N.D. Tex. Feb. 22, 2010) (accepting that hypothetical incorporated moderate social functioning impairment by including limitations such as "simple instructions in a simple and routine work environment," "interact[ing] appropriately with supervisors, co-workers," and "respond[ing] to usual work pressures.")

Plaintiff outlines evidence that details issues with authority and tendency to explode on others. However, the ALJ's RFC decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports the decision or all the evidence that is rejected. *Falco v. Shalala,* 27 F.3d 16, 164 (5th Cir.1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett,* 67 F.3d at 564. Furthermore, courts may not reweigh the evidence or substitute their judgment for that of the Commissioner, however, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence". *See Johnson v. Bowen,* 864 F.2d 340, 343 (5th Cir. 1988) (citations omitted). Thus, the Court finds that the ALJ did not fail to incorporate mental limitations found at step 2 nor fail to explain how these limitations were obtained. Therefore, there is no error and the mental RFC determination is supported by substantial evidence.

## VI.     CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Rec. Doc. No. 21) be **DENIED**, the Commissioner's cross-motion (Rec. Doc. No. 23) be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 1st day of February, 2022.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**